UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT JAMES MORGAN #596132,

        Plaintiff,

v.

BRENDA L. BUCHANAN, et al.,

        Defendants.
_____/

Case No. 2:19-cv-00248

Hon. Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This is a civil rights action brought by state prisoner Robert James Morgan pursuant to 42 U.S.C. § 1983. Morgan alleges that he injured his back while confined at the Chippewa Correctional Facility (URF) in January of 2018. (ECF No. 1, PageID.4.) He explains that he was taken to the hospital on February 3, 2018, and diagnosed with herniated discs and a possible rupture. (*Id.*) Morgan says that after his return to URF, he was unable to rise from his bed for a three-day period from February 5 to 7, 2018. (*Id.*) Morgan says he was told that he would need to walk if he wanted to get treatment, use the restroom, eat, or do anything else. (*Id.*) Morgan says that he could not walk and, as a result, he did not eat, use the bathroom or take his psychiatric medications. (*Id.*) Morgan says that he received a wheelchair and some medical treatment, after his people called. (*Id.*)

Approximately, 40 days later, Morgan received a CT scan and was taken for emergency surgery. (*Id.*) Morgan says that due to Defendants' failure to provide adequate treatment, he unnecessarily experienced an infection in his spine that caused deterioration of the soft tissue in his back. (*Id.*) Morgan says that he continues to suffer harm due to Defendants' failure to treat and properly diagnose his back condition. (*Id.*)

Defendants are Nurse Practitioner (NP) Brenda L. Buchanan, Registered Nurse (RN) Tiffany Haskie, RN Jennifer Headley, RN Ressie Stranaly, RN Mary (nee Guild) Hense, and RN Theresa M. Merling, Executive Secretary Kim Atkinson, and General Office Assistant Megan Schmidt.

Defendants have filed motions for summary judgment and Morgan has replied. (ECF Nos. 12, 16, 18, 21, 28, and 33.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motions for summary judgment and dismiss this case due to Morgan's failure to exhaust his administrative remedies.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing

5

grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to

6

Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
| --- | --- | --- |
| Eighth Amendment deliberate indifference to a serious medical condition. | Buchanan, Haskie, Headley, Stranaly, (nee Guild) Hence, Merling, Atkinson, and Schmidt. | February 2018. |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

8

## V. Grievances Identified by Defendants

In their motion for summary judgment, Defendants identified three grievances that Morgan filed with the MDOC. They claim that a review of these grievances will demonstrate that Morgan has failed to exhaust his administrative remedies. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-07-1844-12E4 (ECF No. 12-2, PageID.75-79.) | Non-Defendant Hatfield | retaliation | 7-1-18 | denied | denied | Rejected as untimely |
| URF-19-01-131-28I (ECF No. 12-2, PageID.65-69.) | nurse | Medication being crushed | 1-8-19 | Rejected for failing to try to resolve the issue with staff. | rejected | rejected |
| URF-18-08-2279-01G (ECF No. 12-2, PageID.70- | nurse | Charged $5.00 co-payment | 7-26-18 | denied | denied | denied |

## VI. Additional Grievance Identified by Morgan

In response, Morgan identified one grievance he filed with the MDOC that he says exhausts his claims. This grievance is summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-02-0497-12D (ECF No. 16-1, PageID.103-104, 106; ECF No. 28-1, PageID.186-192.) | Buchanan, Haskie, Headley, Stranaly, Guild (Hence), Atkinson, John/Jane Does | Failed to provide health care or food for four days while he was unable to move. Forced him to lay in his | 2/6/18 | denied | denied | No appeal in the record |

9

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | | bowel movement and urine. | | | | |

### VII. Analysis

Morgan submitted one relevant grievance **URF-18-02-0497-12D**. The record establishes that Morgan failed to appeal that grievance to Step III. The MDOC Prisoner Step III Grievance Report from 1/1/2013 until 1/17/2020, which is shown below, establishes that Morgan pursued four grievance through Step III of the grievance process:

**MDOC Prisoner Step III Grievance Report**
1/1/2013 to Present

Prisoner #: 596132   Last Name: Morgan   First Name: Robert

| | Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| X | 3/19/2019 | URF-19-01-0131-28I | 28I | 8 | 1/11/2019 | ☐ | ☐ | ☐ | ☑ | ☑ | 3/26/2019 |
| X | 10/5/2018 | URF-18-08-2279-1G | 1G | 8 | 8/7/2018 | ☐ | ☐ | ☑ | ☐ | ☑ | 1/23/2019 |
| X | 9/5/2018 | URF-18-07-1844-28e | 28e | 8 | 7/3/2018 | ☐ | ☐ | ☐ | ☑ | ☑ | 12/28/2018 |
| | 8/3/2016 | IBC-16-05-1277-12D3 | 12D3 | 3 | 5/31/2016 | ☐ | ☐ | ☑ | ☐ | ☑ | 8/31/2016 |

Friday, January 17, 2020                                                                                                         Page 1 of 1

10

(ECF No. 2-3, PageID.142.)

The grievance identifier numbers shown in the Step III Grievance Report indicates that three of the four grievances were processed at URF. But as shown in the summary table in Section V above, these grievances do not relate to Morgan's complaints against the Defendant for lack of medical treatment and care claims during February of 2018. Importantly, grievance **URF-18-02-0497-12D**, on which Morgan relies to show that he exhausted his administrative remedies, is not listed as a grievance that was exhausted through Step III of the process.

Morgan states that his Step III grievance was mailed, but that he never received a response, and that the MDOC either lost or misplaced his Step III grievance appeal. (ECF No. 28, PageID.172, 176.)

The record before the Court, however, indicates that Morgan's Step III appeal, if he did in fact mail it, was untimely. The records show that the Step II grievance response was returned to Morgan on April 10, 2018. (ECF No. 33-2, PageID.217.) Thus, Morgan needed to send his Step III grievance appeal to the Grievance and Appeals Section within ten business days from April 10, 2018, to be considered timely under Policy Directive 03.02.130. According to records provided by Defendants, Morgan received authority to mail something out of the prison on April 26 or 27, 2018, and on April 30, 2018, he did mail something out of the prison because he received a disbursement authorization on that date. (ECF Nos. 33-3 and 33-4, PageID.220-223.) If the Court accepts that Morgan sent his Step III appeal after he received his Step II response on April 10, 2018, the record establishes that Morgan would have sent his

11

appeal at the earliest on April 26, 2018, but more likely April 30, 2018. Assuming that Morgan did send the Step III appeal, which is not supported by the record, his appeal would have been untimely and procedurally rejected. In the opinion of the undersigned, the record does not support a finding that Morgan exhausted his administrative grievance remedies by properly pursuing grievance **URF-18-02-0497-12D** through Step III of the grievance process.[3]

### VIII. Official Capacity Claim

To the extent that Morgan is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state. *Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing

---

[3] Morgan argues that he needs additional discovery regarding the merits of his claims and grievances that he filed. Defendants have indicated that they have provided Morgan with copies of all grievances that he filed with the MDOC.

the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Morgan seeks money damages, costs and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[4]

### IX. Recommendation

The undersigned respectfully recommends that this Court dismiss the complaint without prejudice due to Morgan's failure to administratively exhaust his claims.

Dated:   July 24, 2020                                             /s/ *Maarten Vermaat*
                                                                    MAARTEN VERMAAT
                                                                    U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES:** Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[4] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id*.  Plaintiff does not seek prospective relief.